UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| NICOLE SETTLES, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 23-2249 (ABJ) |
| UNIVERSAL PROTECTION SERVICE, LLC d/b/a ALLIED UNIVERSAL, | ) ) ) ) | |
| Defendant. | ) ) ) | |

# MEMORANDUM OPINION

*Pro se* plaintiff Nicole Settles is a former employee of Universal Protection Service, LLC ("Allied Universal"). *See* Complaint, contained in Exhibit A to the Notice of Removal [Dkt. # 1-1] at 1.[1] On July 13, 2023, she filed this lawsuit alleging wrongful termination, defamation, and discrimination. Compl. at 1. Defendant moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Def.'s Mot. to Dismiss Pl.'s Compl. [Dkt. # 6] ("Mot."). For the reasons set forth below, the motion will be **GRANTED**.

## BACKGROUND

According to the complaint, in August 2019, plaintiff was working for the defendant. Compl. at 1. On August 8, 2019, plaintiff received the terrible news that her son had been shot. Compl. at 3. Plaintiff alleges that she informed an unnamed supervisor that she was taking time off to get medical treatment for her mental health, and the supervisor advised her to request family

---

1   The copy of the complaint found at pages 17–18 of Dkt. # 1-1 appears to be incomplete, as the second page ends in an unfinished sentence. However, there are several copies of the complaint within the set of documents originally filed in this case, and the complaint found on pages 206–212 includes the missing third page, so the Court will be referring to that version of the complaint hereafter.

medical leave. Compl. at 3. She then asked a person she identifies as "Robert Lopez" about medical leave, but he allegedly told her that she needed to "go somewhere and retire and find another job." Compl. at 3. Plaintiff asserts that on August 27, 2019, she "was having a mental breakdown" and went to a doctor for medical assistance. Compl. at 3. She alleges that Lopez called her in after the doctor's appointment and terminated her from her job on the same day, and that she was "written up" on September 23, 2019. Compl. at 3–4. Plaintiff asserts that the "workplace ha[d] become very toxic," and states that at some point, a supervising officer named Davonte Walls told her that "texting him wasn't proper to call off." Compl. at 4. She alleges that she called a day in advance and kept trying to reach him, and that this environment was "extremely hostile and bad for mental stress." Compl. at 4.

Plaintiff states that she was rehired in approximately January 2020, "and then the pandemic happened." Compl. at 1. In April 2023, plaintiff attended defendant's job fair, and she was rehired. Compl. at 1, 3. She alleges that upon her return, "[a]fter Mr. Lopez and Ms. D. Johnson spotted me[,] they soon after defame my name character and so on," and that her "reputation was defamed and slandered." Compl. at 3–4. Plaintiff further states that her new account manager, who did not know her personally, sent her a text message saying that "they heard about me . . . ." Compl. at 3. On an unspecified date, defendant terminated plaintiff's employment again. Compl. at 1.

Plaintiff answers the question on the complaint form calling for the relief she is requesting as follows: "I am asking for $333,000 for mental stress, defaming my character, and lost wages. Mr. Richard Lopez ha[s] defamed my reputation throughout the job and I mentally have no chance help." Compl. at 1.

On July 13, 2023, plaintiff filed this action in the Superior Court of the District of Columbia. Compl. at 1. Defendant removed the case to this Court on August 4, 2023, *see* Notice

of Removal [Dkt. # 1], and it filed a motion to dismiss what it understood to be a lawsuit under the Family and Medical Leave Act ("FMLA") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  *See* Mot.  In response, plaintiff insisted that she was not bringing an FMLA action, but rather claiming that she had been "illegally terminated" from her job.  Pl.'s Mem. in Opp. to Mot. [Dkt # 10] ("Opp.") at 1 (stating that "FMLA is not my case").[2]  She further alleges that she was "discriminated against by Mr. Lopez and he continue[d] to defame . . . [her] character."  *Id.*  The matter is fully briefed.  *See* Opp.; Def.'s Reply in Supp. of Mot. [Dkt. # 12] ("Reply Brief").

## STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In *Iqbal*, the Supreme Court reiterated the two principles underlying its decision in *Twombly*: "[f]irst, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678, and "[s]econd, only a complaint that states a plausible claim for relief survives a motion to dismiss."  *Id.* at 679, citing *Twombly*, 550 U.S. at 556.

A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.*  A pleading must offer more than "labels and conclusions" or a "formulaic recitation of the elements of a cause of action," *id.*, quoting

---

2   When reviewing a *pro se* litigant's pleadings, consideration may be given to "supplemental material filed by a pro se litigant in order to clarify the precise claims being urged."  *Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007).

*Twombly*, 550 U.S. at 555, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

When considering a motion to dismiss under Rule 12(b)(6), the Court is bound to construe a complaint liberally in the plaintiff's favor, and it should grant the plaintiff "the benefit of all inferences that can be derived from the facts alleged." *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994), citing *Schuler v. United States*, 617 F.2d 605, 608 (D.C. Cir. 1979). Nevertheless, the Court need not accept inferences drawn by the plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions. *See id.*; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). In ruling upon a motion to dismiss for failure to state a claim, a court may ordinarily consider only "the facts alleged in the complaint, documents attached as exhibits or incorporated by reference in the complaint, and matters about which the Court may take judicial notice." *Gustave-Schmidt v. Chao*, 226 F. Supp. 2d 191, 196 (D.D.C. 2002), citing *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624–25 (D.C. Cir. 1997).

Where an action is brought by a *pro se* plaintiff, a district court has an obligation "to consider [her] filings as a whole before dismissing a complaint," *Schnitzler v. United States*, 761 F.3d 33, 38 (D.C. Cir. 2014), citing *Richardson v. United States*, 193 F.3d 545, 548 (D.C. Cir. 1999), because such complaints are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, a court need not accept inferences drawn by a *pro se* plaintiff if those inferences are unsupported by facts alleged in the complaint, nor must it accept plaintiff's legal conclusions. *Kowal*, 16 F.3d at 1276; *see also Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).

**ANALYSIS**

Defendant argues that plaintiff's complaint should be dismissed for failure to state a claim, contending that it is "unclear what type of causes of action she is raising or how she plans to support each allegation she has brought." Mot. at 3–5. After considering plaintiff's filings as a whole to determine what claims she is bringing, and drawing all inferences in plaintiff's favor, the Court agrees with defendant that plaintiff has failed to state a claim for wrongful termination, discrimination, or defamation, as she suggests she intended.

**I.     Plaintiff fails to state a wrongful termination claim.**

"Under District of Columbia law, 'employment is presumed to be at will, unless the contract of employment expressly provides otherwise.'" *Liberatore v. Melville Corp.*, 168 F.3d 1326, 1328 n. 3 (D.C. Cir. 1999), quoting *Carl v. Child.'s Hosp.*, 702 A.2d 159, 162 (D.C. 1997) (Terry, J., concurring). "An employee who serves at the will of his or her employer may be discharged 'at any time and for any reason, or for no reason at all.'" *Id.* at 1329, quoting *Adams v. George W. Cochran & Co., Inc.*, 597 A.2d 28, 30 (D.C. 1991).

But there is a public policy exception to this general rule. In *Adams*, the D.C. Court of Appeals held that an at-will employee stated a cause of action for wrongful discharge where the employee would have been forced to violate the law in order to avoid being terminated. 597 A.2d at 34. The court described it as a "very narrow exception to the at-will doctrine" limited to "when the sole reason for the discharge is the employee's refusal to violate the law, as expressed in a statute or municipal regulation." *Id.* The D.C. Court of Appeals expanded this exception in *Carl v. Children's Hospital*, 702 A.2d 159 (D.C. 1997), holding that the public policy exception was not limited to instances where an at-will employee was discharged for an outright refusal to violate the law. It may also exist where the employee acted in furtherance of a public policy "solidly

5

based on a statute or regulation that reflects the particular public policy to be applied, or (if appropriate) on a constitutional provision concretely applicable to the defendant's conduct." *Id.* at 163 (Terry, J., concurring).

Plaintiff does not allege – and there are no filings to suggest – that she was not an at-will employee.  Nor has she alleged any facts suggesting that she falls within a public policy exception.  Rather, plaintiff's threadbare pleadings merely claim that she was "illegally terminated," Opp. at 1, without any further factual allegations that would give rise to an inference that her termination was wrongful in some way.  While a *pro se* plaintiff is afforded greater leniency under the pleading standards, her complaint must still be "consistent with the edicts of *Iqbal* and *Bell Atlantic v. Twombly*," *Gallo v. District of Columbia*, 610 F. Supp. 3d 73, 81 (D.D.C. 2022) (internal citation omitted), which require that a complaint allege facts that go beyond the "sheer possibility" that the defendant has acted unlawfully.  *Iqbal*, 556 U.S. at 678, citing *Twombly*, 550 U.S. at 556.  Therefore, plaintiff's claim for wrongful termination will be dismissed.[3]

## II.     Plaintiff fails to state a discrimination claim.

In her opposition, plaintiff claims that "FMLA is not my case I came forward with I was illegally terminated from my job."  Opp. at 1.  She alleges that she was "illegally terminated on September 24, 2019, not for no medical leave," adding that she was "discriminated against by Mr.

---

3     While plaintiff plainly states in her opposition that she is not bringing a case under the FMLA, Opp. at 1, a reading of her complaint gives rise to the impression that her grievance is that defendant wrongfully terminated her for having a "mental breakdown" and leaving to seek medical help.  Compl. at 3.  Defendant's motion to dismiss therefore focused on what seemed to be plaintiff's FMLA claims.  *See* Mot. at 5.  To the extent plaintiff did seek to allege an FMLA claim for her August 27, 2019 termination, defendant is correct that any FMLA claim related to this termination would be barred by the statute of limitations.  The statute of limitations for FMLA claims is three years for "willful" violations and two years for all other violations.  *See* 29 U.S.C. § 2617(c)(1)-(2); *Murphy v. District of Columbia*, 390 F. Supp. 3d 59, 66 (D.D.C. 2019).  Because plaintiff filed this action on July 13, 2023, almost four years later, any FMLA claims based on that event are time barred.  *See* Compl.

6

Lopez and he continue[d] to defame" her character.  Opp. at 1–3.  While defendant argues that plaintiff's discrimination claims should be dismissed because she cannot introduce a new cause of action in her opposition, Reply at 3, courts in this circuit have, under certain circumstances, allowed *pro se* opposition briefs to constructively amend complaints.  *See Richardson v. United States*, 193 F.3d 545, 548–49 (D.C. Cir. 1999) (holding that district court erred in refusing to consider *pro se* plaintiff's response to defendant's motion to dismiss to constitute an amendment to his original complaint).  But even if the Court accepts plaintiff's proposed discrimination claim as an amendment to her complaint, her allegations still cannot survive a motion to dismiss.

Under Title VII, it is an "unlawful employment practice for an employer . . . to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e–2(a)(1).  The Age Discrimination in Employment Act, ("ADEA"), proscribes discrimination on the basis of age, *see* 29 U.S.C. § 621 *et seq.*, and the Americans with Disabilities Act ("ADA") imposes a different set of requirements to guard against discrimination against individuals with disabilities in the workplace.  *See* 42 U.S.C. § 12101 *et seq.*  Plaintiff does not specify in the complaint what type of discrimination she was allegedly subjected to in this case, and she does not identify the legal basis for her claim.

The elements of any of these types of discrimination claims are that "(i) the plaintiff suffered an adverse employment action (ii) because of the plaintiff's race, color, religion, sex, national origin, age, or disability." *See Baloch v. Kempthorne*, 550 F.3d 1191, 1196 (D.C. Cir. 2008) (Title VII and ADEA claims); *see also Waggel v. George Washington Univ.*, 957 F.3d 1364, 1373 (D.C. Cir. 2020) (ADA claim).  But "a formulaic recitation of the elements of a cause of action will not do," *Brown v. Sessoms*, 774 F.3d 1016, 1020 (D.C. Cir. 2014), quoting *Twombly*,

550 U.S. at 555, and plaintiff must identify factual allegations that at least show a "nexus between defendant['s] alleged discriminatory motive and the adverse action." *Easaw v. Newport*, 253 F. Supp. 3d 22, 30 (D.D.C. 2017).

An adverse employment action is a "a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998). While plaintiff has alleged that she was subjected to the adverse employment action of termination on more than one occasion, her complaint does not include other factual allegations regarding her protected status under Title VII or any other statute, or an alleged discriminatory motive based on that status.

Plaintiff explains in her opposition that she was "discriminated against by Mr. Lopez," Opp. at 1, and that she was terminated "because Mr. Lopez continued to say to me you people and I asked him to define you people and it was uphill trouble for me and then I was illegally terminated for personal things I had been going through mentally." Opp. at 3.  She could be implying that Lopez had some animus against some set of individuals that included the plaintiff ("you people"),

but she does not allege that she was a member of any protected class. [4] Or she could be suggesting that he took action based on her mental health status. But she does not allege that she was disabled within the scope of the ADA.

While the Court appreciates that plaintiff has been through some difficult struggles that deserved sensitivity, it is compelled to conclude that the complaint fails to meet the relatively modest requirements of *Iqbal* and *Twombly*: even if one takes every word of the pleading as true, there are not sufficient facts to support a plausible inference that she was the victim of discrimination based on a protected status, and the Court will dismiss the claim.[5]

**III.     Plaintiff fails to state a defamation claim.**

Plaintiff alleges that Lopez and Johnson defamed her name and character, and that her new account manager texted her saying "that they heard about [her]." Compl. at 3; Opp. at 2. Defendant argues that if plaintiff meant to include a claim for defamation, she has failed to allege facts that give rise to a plausible claim. Mot. at 3, 6. The Court agrees.

To state a claim for defamation under D.C. law, a plaintiff must allege four elements: "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the

---

4     In her opposition brief, plaintiff also asserts that "Mr. Lopez . . . and [sic] to me to go somewhere a [sic] choose between my religion and my job I have evidence." Opp. at 2. Plaintiff does not describe her religion, nor does she state whether this is allegedly why Lopez terminated her. Therefore, even interpreting the complaint generously as alleging that plaintiff's protected status was her religion, she has not provided anything beyond a formulaic recitation of this element, nor has she alleged that she suffered an adverse employment action *because of* her religion.

There are no other materials in the record that add clarity; plaintiff's original complaint to the D.C. Office of Human Rights is attached to the complaint, and on that form, plaintiff checked off the boxes for alleged discrimination on the basis of race, sex, disability, and family responsibilities – but not religion – and she wrote, "I have been [complaining] about the abuse of authority Mr. Lopez and Mr. Freeman had been doing to my union rep, Mr. Josh. Mr. Lopez has always retaliate[d] against me and discriminate[d] against me and no one did nothing." *See* [Dkt. # 1-1] at 52–53.

9

defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Armstrong v. Thompson*, 80 A.3d 177, 183 (D.C. 2013) (citations omitted). A statement is "defamatory" if it "tends to injure the plaintiff in his trade, profession or community standing, or lower him in the estimation of the community." *Jankovic v. Int'l Crisis Grp.*, 494 F.3d 1080, 1091 (D.C. Cir. 2007), citing *Moss v. Stockard*, 580 A.2d 1011, 1023 (D.C. 1990). An "allegedly defamatory remark must be more than unpleasant or offensive; the language must make the plaintiff appear 'odious, infamous, or ridiculous.'" *Id.*, quoting *Howard Univ. v. Best*, 484 A.2d 958, 989 (D.C. 1984).

Whether a communication is capable of a defamatory meaning is a question of law reserved for the Court, *see Clampitt v. Am. Univ.*, 957 A.2d 23, 39 (D.C. 2008) (citation omitted), and

---

5       To the extent plaintiff seeks to bring a hostile work environment claim under Title VII, she has similarly failed to allege facts that would support such a claim. A hostile work environment exists when an employer subjects an employee to "discriminatory intimidation, ridicule, and insult" that is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal citations omitted). Plaintiff must allege facts showing that she subjectively perceived the environment as hostile, as well as facts showing that the environment is one "that a reasonable person would find hostile or abusive." *Id.* To determine whether the objective standard has been met, courts must consider the "totality of the circumstances, including the frequency of the discriminatory conduct, its severity, its offensiveness, and whether it interferes with an employee's work performance." *Baloch*, 550 F.3d at 1201. In her complaint, plaintiff alleges that Officer Walls told her that texting him was not "proper to call off," Compl. at 4, presumably in relation to her taking time off for a doctor's appointment on August 27, 2019. While her claim satisfies the subjective prong of the test because she states that "[t]his environment is extremely hostile and bad for mental stress," Compl. at 4, the totality of circumstances does not satisfy the objective component of a hostile work environment claim. While plaintiff's write up and termination understandably upset her, Officer Wall's instructions regarding how to communicate time off on one instance do not reflect "pervasive and constant abuse." *Baloch*, 550 F.3d at 1201. Moreover, neither Officer Wall's comments nor any other comments or actions directed at plaintiff expressly focused on her race, color, religion, sex, national origin, age, or disability, to allege facts that give rise to a plausible hostile work environment claim.

whether a statement is privileged is also a question of law. *See Carter v. Hahn*, 821 A.2d 890, 894 (D.C. 2003) (citation omitted). Under the common interest privilege, for example, a statement is protected if "it is (1) made in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has or honestly believes he has a duty (3) to a person who has such a corresponding interest or duty." *Payne v. Clark*, 25 A.3d 918, 925 (D.C. 2011), citing *Carter*, 821 A.2d at 894 (internal quotation marks omitted). Such a privilege may be found in circumstances where an individual's professional qualifications are discussed. *See Greenya v. George Washington Univ.*, 512 F.2d 556, 563 (D.C. Cir. 1975) ("It is well accepted that officers and faculty members of educational organizations enjoy a qualified privilege to discuss the qualifications and character of fellow officers and faculty members, if the matter communicated is pertinent to the functioning of the educational institution."). A plaintiff may overcome an assertion of privilege by demonstrating that "a publication occurred outside normal channels," or in a "normal manner" that "resulted in an unreasonable degree of publication," or if the "publication was made with malicious intent." *Id.*; *see Blodgett v. University Club*, 930 A.2d 210, 224–25 (D.C. 2007).

The Court acknowledges that the alleged comments directing plaintiff to "retire and find another job," Compl. at 3, at a time of great personal stress were undoubtedly hurtful. But while plaintiff alleges that Lopez "really hurt [her] reputation," Opp. at 2, she does not describe in her complaint or her opposition any allegedly defamatory statements published to others. Her opposition brief merely recites the elements of a defamation claim. *See* Opp. at 1. Without any allegations as to the contents of the statements, the Court simply cannot determine whether they were false and capable of a defamatory meaning. Nor can the Court determine if and to whom defendant published the negative information. And even if defendant did communicate a false and

11

defamatory statement about plaintiff, she fails to allege that defendant did so without privilege to a third party. Therefore, plaintiff has failed to allege sufficient facts to give rise to a plausible defamation claim, and her complaint will be dismissed. *See Bell-Bos. v. Manpower Int'l Staffing Agency*, 61 F. Supp. 3d 74, 78 (D.D.C. 2014) (dismissing complaint that did not set forth the verbatim language or the substance of the allegedly defamatory matter); *Stovell v. James*, 810 F. Supp. 2d 237, 248 (D.D.C. 2011) ("In order to plead defamation, a plaintiff should allege specific defamatory comments by plead[ing] the time, place, content, speaker, and listener of the alleged defamatory matter.") (internal citations and quotations omitted).

## CONCLUSION

For the foregoing reasons, defendant's Motion to Dismiss [Dkt. # 6] is **GRANTED**. A separate order will issue.

AMY BERMAN JACKSON
United States District Judge

DATE: March 28, 2024

12